THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUCIA WONG, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, <br><br> Defendant. | CASE NO. C10-0180-JCC <br><br> ORDER |

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 26), Plaintiff's response (Dkt. No. 30), and Defendant's reply (Dkt. No. 38). Having thoroughly considered the parties' briefing and the relevant record, the Court grants the motion for the reasons explained herein.

I.   BACKGROUND

This case arises out of Plaintiff Lucia Wong's allegations of wrongful termination as an employee of Defendant Wells Fargo Bank. Ms. Wong worked in various capacities for Defendant or its predecessor for over ten years. As of November 2008, she was the manager of the Civica Wells Fargo Branch in Bellevue, Washington. (Dkt. No. 28-4 at 6-7.) In that capacity, she was responsible for the operations of the branch and for ensuring that the branch complied with applicable banking regulations. (*Id.* at 7-8.) As a new hire, Ms. Wong had acknowledged and agreed to comply with Wells Fargo's handbook and code of ethics, which barred employees

from handling or approving personal financial transactions with Wells Fargo. (Dkt. No. 28-1 at 40; Dkt. No. 28-2.) The handbook also contained a policy requiring that employees' personal financial transactions with Wells Fargo be approved by the next higher level of authority within the bank, and it prohibited employees from requesting approval from coworkers or subordinates. (Dkt. No. 28-1 at 40.) The handbook made clear that failure to comply with these policies would be grounds for termination. (*Id.* at 20.)

On Friday, November 28, 2008, Ms. Wong deposited $9,800 in cash into her personal checking account at the Wells Fargo Union Station Branch in Seattle. A cash deposit of over $10,000 would have required the bank to issue a Currency Transaction Report (CTR) under the Bank Secrecy Act. *See* 31 U.S.C. § 5313; 31 C.F.R. § 103.22. On the following Monday, December 1, 2008, Ms. Wong deposited a further $9,400 in cash into her personal checking account at the Civica Branch in Bellevue, where she was the branch manager. Given that this second transaction was also just below the CTR threshold, it satisfied regulatory criteria requiring the issuance of a Suspicious Activity Report (SAR). *See* 31 C.F.R. § 103.18. However, Ms. Wong did not direct the teller who handled this second deposit—one of Ms. Wong's subordinates—to generate a SAR, and the teller did not file a SAR. (Dkt. No. 28-4 at 19.) Bank records indicate that on Tuesday, December 2, 2008, Ms. Wong withdrew $19,214.45 from her personal checking account and purchased a cashier's check for the balance of her car loan. (Dkt. No. 28-2 at 8, 11.) Had Ms. Wong purchased the cashier's check on the previous day with the $9,400 in cash, the bank would have been required to record the transaction in a Monetary Instrument Log. *See* 31 C.F.R. § 103.29. Although the funds for the cashier's check were drawn from Ms. Wong's account, the check identified the purchaser as her mother and the account as her parents' account. (Dkt. No. 28-2 at 11.)

These three transactions by Ms. Wong triggered an electronic alert by a bank system required by federal regulators and designed to detect suspicious banking activity. (Dkt. 28-3 at 8.) An employee in Wells Fargo's Special Investigations unit reviewed the transactions and

interviewed the employees involved, including Ms. Wong. The investigator concluded that Ms. Wong had engaged in "structuring"—the manipulation of transactions to avoid reporting requirements. Four of Ms. Wong's immediate supervisors conferred regarding the investigator's findings and chose to terminate Ms. Wong's employment.

Ms. Wong alleges that her termination constituted unlawful discrimination on the basis of race or ancestry, and that the accusation that she structured financial transactions was merely a pretext for the wrongful termination. (Dkt. No. 3 at 8; Dkt. No. 31.)

## II.     DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may move for summary judgment on the basis that the nonmoving party has failed to make a sufficient showing on an essential element of his or her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). To overcome such a motion, the nonmovant must produce evidence with respect to the essential element, identifying specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1). "One of the principal purposes of the summary-judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323.

### A.     Discrimination on the basis of race or ancestry.

For claims alleging wrongful termination under Washington's Law Against Discrimination, RCW 49.60.010 *et seq.*, Washington courts utilize the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kastanis v. Educ. Employees Credit Union*, 859 P.2d 26, 30 (Wash. 1993). Under *McDonnell Douglas*, the plaintiff must first make out a prima facie case of wrongful termination by showing that she (1) was qualified for the position and doing satisfactory work; (2) is a member of a protected class; (3) was discharged; and (4) was treated less favorably than similarly situated individuals who are not members of the protected class. 411 U.S. at 802; *see also Grimwood v. Univ. of Puget Sound, Inc.*, 753 P.2d 517, 520 (Wash. 1988). The defendant must then show a legitimate

ORDER
PAGE - 3

nondiscriminatory reason for the discharge. If the defendant meets that burden, the plaintiff must in turn show that the articulated reason was merely a pretext for a discriminatory purpose. *McDonnell Douglas*, 411 U.S. at 802-04.

Here, Plaintiff has not established a prima facie case of wrongful termination. First, she has not shown that she was performing satisfactorily. Plaintiff does not dispute that her transactions met the federal regulatory requirements for suspicious activity reporting, nor does she deny that as branch manager, she was responsible for ensuring compliance with reporting requirements. (Dkt. No. 28-2 at 23-25; Dkt. No. 28-4 at 7, 8, 19.) There is no dispute that Plaintiff violated bank policy by requesting that a subordinate approve her personal financial transactions. (Dkt. No. 28-1 at 40.) Nor is there any dispute that Plaintiff's instruction to list her mother as the purchaser of the cashier's check, when the funds had been withdrawn from her own account and her mother was not present at the time, was a further violation of bank policy.

Plaintiff states that she never instructed any employee to violate federal reporting requirements or bank policy, and that when she conducted transactions at the Civica Branch, she was acting as a bank customer, not as the branch manager. (Dkt. No. 31 at 3.) As stated above, however, Plaintiff acknowledged in her deposition that she had overall responsibility for branch compliance with applicable regulations. (Dkt. No. 28-4 at 8.) It is also clear that she was immediately recognizable as branch manager when she sought approval of her personal transactions from subordinates. (Dkt. No. 28-2 at 24.) Plaintiff's other proffered reasons for her actions—that she received two separate gifts of cash from her parents and that her mother wanted to be listed as purchaser on the cashier's check in order to preserve a record of her gift—do not explain Plaintiff's admitted failure to comply with banking regulations and her employer's policies. She therefore has not shown that her performance at the time of discharge was satisfactory.

Second, Plaintiff has not shown that she was treated less favorably than similarly situated individuals who are not Asian or Asian American. Although none of the four other bank

employees involved in the subject transactions was terminated, none had overall responsibility for branch compliance with reporting requirements, and none was accused of structuring personal financial transactions in violation of banking regulations and bank policy. Moreover, three of the four employees are Asian or Asian American women. (Dkt. No. 27 at 3.) Thus, Plaintiff has shown neither that these other employees were similarly situated nor that they are outside her protected class. *See Domingo v. Boeing Employees' Credit Union*, 98 P.3d 1222, 1226 (Wash. Ct. App. 2004) (where "comparators" allegedly treated more favorably are not outside the plaintiff's protected class, summary judgment on disparate treatment claim is appropriate). Given that Plaintiff here has not met her initial burden on essential elements of her wrongful termination claim, summary judgment is warranted.

Nonetheless, even if Plaintiff were able to make out a prima facie case of wrongful termination, Defendant easily meets its burden of showing legitimate nondiscriminatory reasons for terminating Plaintiff's employment. Failure to ensure compliance with federal banking regulations, particularly when Plaintiff had received extensive training on such regulations (*see* Dkt. No. 28-4 at 10-11), is a legitimate basis for termination. Plaintiff also had acknowledged that violations of bank policy could constitute terminable offenses. (Dkt. No. 28-2 at 2-5.) There can be little question that the bank's stated reasons for discharging Plaintiff were legitimate and nondiscriminatory.

Plaintiff has adduced no evidence that those reasons were pretextual. Defendant's investigator conducted an inquiry and concluded that Plaintiff had engaged in "structuring" and had violated bank policy. (*Id.* at 33-36.) Plaintiff's immediate supervisor, after consultation with a human resources manager and Wells Fargo's president of community banking for Washington, decided that termination was necessary. (Dkt. No. 28-3 at 18.) Plaintiff stated via declaration that "race and ancestry is one factor I believe played a role in my termination." (Dkt. No. 31 at 1.) She also stated that "it is well known among the employees that a glass ceiling exists for Asian-Americans when it comes to promotions." (*Id.* at 2.) Plaintiff's subjective beliefs alone, however,

do not establish a genuine issue of fact or constitute competent evidence that Defendant acted with an unlawful motive. *See Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001). It is also noteworthy that Plaintiff's immediate supervisor, who had primary responsibility for the decision to terminate her employment, is Asian American. (Dkt. No. 27 at 3.) Plaintiff has come forth with no evidence that Defendant considered, or was motivated by, her race or national origin in deciding to discharge her, and summary judgment is proper on that basis as well.

### B. Disability or retaliation for medical leave.

Plaintiff did not include any allegations in her Complaint related to a disability or retaliation for medical leave. (Dkt. No. 3 at 6-9.) Nonetheless, in response to Defendant's summary judgment motion, Plaintiff stated her belief that she was discharged in part because of "my disability and their ire for the medical leave of absences and vacation I had taken." (Dkt. No. 31 at 1-2.) For the reasons stated above, any claim of employment discrimination on the basis of a disability fails. Plaintiff has proffered no evidence of either a disability or disparate treatment based on a disability.

Likewise, setting aside Plaintiff's failure to plead retaliation, any claim of retaliation fails for lack of evidence. A plaintiff alleging retaliation must show that (1) she engaged in statutorily protected activity; (2) an adverse employment action was taken; and (3) there was a causal link between the employee's activity and the employer's adverse action. *Estevez v. Faculty Club of Univ. of Wash.*, 120 P.3d 579, 589 (Wash. Ct. App. 2005). Here again, Plaintiff has offered no evidence showing that she took medical leave or that any such leave factored into Defendant's decision to discharge her. Indeed, the declarations of Plaintiff's supervisors averring that they were not even aware of any such medical leave remain uncontroverted. (Dkt. No. 35 at 3; Dkt. No. 36 at 3.)

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 26) is

1  GRANTED.

2     DATED this 13th day of September 2011.

                                        John C. Coughenour
                                        UNITED STATES DISTRICT JUDGE